IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 14, 2018

FILED
01/18/2019
Clerk of the
Appellate Courts

## STATE OF TENNESSEE v. SOMMER LEININGER

**Appeal from the Maury County Circuit Court**
**No. 25028      Stella L. Hargrove, Judge**

_____

### No.  M2017-02020-CCA-R3-CD
_____

The Defendant, Sommer Leininger, appeals as of right, from the Maury County Circuit Court's revocation of her diversionary sentence and order of six months' incarceration for her conviction for reckless aggravated assault.  Tenn. Code Ann. § 39-13-102.  The Defendant contends that (1) the trial court abused its discretion by ordering her to serve six months of split confinement instead of probation and (2) the trial court improperly restricted her ability to accumulate good behavior credits while incarcerated.  Following our review, we affirm the judgment of the trial court in part but reverse and remand the case for entry of a corrected judgment removing the trial court's restriction on the Defendant's ability to accumulate good behavior credits.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

Larry Samuel Patterson, Columbia, Tennessee, for the appellant, Sommer Leininger.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Brent Cooper, District Attorney General; and Kyle Dodd, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL BACKGROUND

On October 10, 2016, the Defendant pled guilty to one count of reckless aggravated assault for shooting the victim, Cody Woten, in the back of his left shoulder. The trial court granted the Defendant a two-year sentence on judicial diversion.

On March 6, 2017, a probation violation warrant was issued for the Defendant because she allegedly violated the terms of her release when she was arrested on a new assault charge in February 2017. An amended warrant was issued on June 8, 2017, alleging that the Defendant had two new charges for disorderly conduct. On June 22, 2017, a revocation hearing was held.

At the hearing, Matthew Thomas, who worked with the Board of Probation and Parole, testified that the Defendant began probation for her reckless aggravated assault conviction on October 10, 2016, and that her diverted two-year sentence was set to expire on October 10, 2018. Mr. Thomas testified that on February 11, 2017, a probation violation arrest warrant was issued for the Defendant. The Defendant had been arrested on February 1, 2017, for committing one count of assault with bodily injury. The February 11 warrant alleged three grounds for violation: (1) the Defendant violated the laws of the United States, (2) the Defendant failed to report her arrest and new charges to her probation officer, and (3) the Defendant behaved in a manner which posed a threat.

Mr. Thomas also testified that the Defendant had been "sanctioned" on October 26, 2016. He explained that a sanction was a "verbal warning" and that the Defendant had received a sanction while reporting "for her wardrobe choice and for failing to follow instructions."

H.H.[1] testified that she was seventeen years old and a senior in a high school in Williamson County. H.H. identified the Defendant and said that she had known her since an incident on October 29, 2016, but that the Defendant was also a student at her high school. H.H. explained that both she and the Defendant had attended a school sponsored Halloween party. However, approximately one hour after H.H. arrived, police broke up the party because of underage drinking. H.H. said that a friend from the party drove her to her car, which was parked in a nearby lot. H.H. stated that her boyfriend and several friends were also at this parking lot when she arrived. Some of her friends were sitting in a vehicle, and H.H. decided to climb into the back of the vehicle. She stated that once she got into the car, "everyone was bickering" and it "was very chaotic." H.H. exited the vehicle, and her boyfriend, who had been standing at his car, which was parked a few spaces away, walked over and asked her what was happening. H.H. told him that one of the individuals in the vehicle was yelling at her, and he started shouting and got into a fight with a boy from the car.

H.H. explained that her boyfriend was "out of control" and that "the next thing [she] knew, [she] was on the ground." H.H. testified that she did not see who "put [her] on the ground[,]" but she assumed it was the Defendant because eventually someone

---

[1] It is the policy of this court to protect the identity of minor victims. In furtherance of this policy, we will refer to the victim by her initials.

pulled the assailant off of her and that was when she saw that the Defendant. H.H. asserted that she "didn't throw the first punch" and "didn't even defend" herself.

H.H. said that she went home after the attack and had "a cut down [her] nose that was bleeding and" she "had broken blood vessels all over [her] eyes." H.H. explained that she remembered "having [her] hair pulled and then [she] woke up with a black eye and a broken nose and a concussion[.]" H.H. did not seek medical attention immediately, but she went to a walk-in medical clinic on the Monday following the Saturday night incident. H.H. had follow-up appointments with an "ENT[,]" "a doctor at Vanderbilt [who] specialize[d] in concussions[,]" and "an eye doctor[.]" When asked if she had any contact with the Defendant, H.H. said that the Defendant texted her and "tried to apologize" shortly after the attack. However, after obtaining an order of protection, the Defendant did not contact H.H. H.H. testified that there were pending criminal charges against the Defendant in Williamson County related to this incident.

Maria Mendez testified that she was the Defendant's mother. She confirmed that the victim in the shooting case for which her daughter was initially placed on diversion was the Defendant's former boyfriend. She explained that the Defendant had not yet graduated from high school but was "in credit recovery . . . because she fell a few credits short." Ms. Mendez stated that the Defendant had an expected graduation date of July 2017 and that the Defendant planned to attend college at Columbia State in Franklin. She testified that the Defendant lived with her and her husband. Ms. Mendez confirmed that the Defendant had one simple assault and two disorderly conduct charges pending in Williamson County, stemming from the incident involving H.H.

At the conclusion of the hearing, the trial court found that the State had met its burden of proof regarding the grounds of the Defendant's new arrest and her failure to report the arrest. The trial court revoked her diversion, and a sentencing hearing was held on September 7. 2017.

At the sentencing hearing, the Defendant testified. She confirmed that she pled guilty to reckless aggravated assault related to an incident during which she shot her boyfriend, Mr. Woten. She also testified that she had another criminal case pending in Williamson County. The Defendant said that she was nineteen years old and was working at a fast-food restaurant. She had graduated from high school and was enrolled in college at "Columbia State, at the Franklin Campus." She stated that she was taking classes to become a dental hygienist. The Defendant explained that she was pregnant with Mr. Woten's child and that she and Mr. Woten were "still together[.]" When asked what assurances she could give the trial court to show that she had "changed her life" after the February 2017 arrest, the Defendant stated,

> I feel like everything that's happened since that incident has been
> positive and I feel like . . . a negative ruling will be severely detrimental to

-3-

my health . . . because I have already been under so much stress and I'm worried about a miscarriage.

She also asserted that she was taking her "education more seriously" and that her "relationship with God ha[d] gotten stronger." The Defendant testified that it was important to her to try to remain on diversion so that she could "become successful in [her] occupation" and "support [her] child and family." The Defendant also testified that she was willing to serve jail time in order to keep her diversion.

On cross-examination, the Defendant agreed that she initially lied to police about the shooting incident involving Mr. Woten. She confirmed that she told investigating officers that "a Hispanic male named Joe had shot [her] boyfriend" even though she was the one who shot Mr. Woten. The Defendant explained that she lied to police because she "was scared[,]" "had just turned" eighteen, and she "didn't know what [she] was thinking." The Defendant also admitted that she violated the terms of her diversion.

At the conclusion of the sentencing hearing, the trial court denied judicial diversion and sentenced the Defendant to six months' split confinement of the two and a half year sentence. Additionally, the trial court ordered the Defendant to serve four months before she would be eligible for any good behavior credit. The Defendant filed a timely notice of appeal.

## ANALYSIS

### I. Sentencing

On appeal, the Defendant argues that the trial court abused its discretion in denying her probation and ordering her to serve six months in confinement. Specifically, the Defendant argues that the trial court "misapplied enhancement factor ten, . . . committing a crime when the risk to human life was high" and asks for a probationary sentence. Additionally, the Defendant argues that "there were many factors that weighed in her favor including her not having a prior record, the charges that were the basis of her diversion violation were still pending, [and] she was working and going to college." The State responds that the trial court exercised proper discretion in ordering the Defendant to serve six months in custody.

The Sentencing Reform Act was enacted in order "to promote justice" by ensuring that every defendant "be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102. In order to implement the purposes of the Sentencing Reform Act, trial courts must consider several sentencing principles. The sentence imposed for an offense "should be no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the pruposes for which the sentence is imposed." Tenn. Code Ann.

§ 40-35-103(2),(4). Thus, before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Bise, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).

A defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6)(A). However, no longer is any defendant entitled to a presumption that he or she is a favorable candidate for alternative sentencing. Carter, 254 S.W.3d at 347. Tennessee Code Annotated section 40-35-102(6) is now only advisory. See Tenn. Code Ann. § 40-35-102(6)(D).

A trial court should consider the following when determining any defendant's suitability for alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

An offender is eligible for probation if he or she is sentenced to ten years or less and has not been convicted of certain specified offenses. See Tenn. Code Ann. § 40-35-303(a). While the trial court was required to automatically consider probation as a sentencing option, see Tennessee Code Annotated section 40-35-303(b), no criminal defendant is automatically entitled to probation as a matter of law, see State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). It is the defendant's burden to establish his or her suitability for full probation. See Carter, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)). The defendant must demonstrate that probation will "subserve the ends of justice and the best interests of both the public and the defendant." Hooper v. State, 297 S.W.2d 78, 81 (Tenn. 1956), overruled on other grounds, State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

Here, the trial court considered the Defendant's lack of a prior record, social history, and mental and physical health. The trial court reviewed her family relationships and her employment history. The trial court also acknowledged the "facts and circumstances surrounding the offense." The trial court expressed concern about the Defendant's untruthful behavior and a failure to act responsibly by placing herself in a situation during which "guns mixed with alcohol." The trial court also concluded that the Defendant was not likely to be rehabilitated during a period of probation given her newly acquired charges. The trial court stated that the Defendant was not likely to abide by the terms of probation and the court needed to protect the interest of society from future criminal conduct of the Defendant. The trial court also expressed concern that a sentence of full probation would depreciate the seriousness of the offense. Regarding the enhancement factor about having no hesitation committing a crime when the risk to human life was high, the trial court stated,

It's particularly appropriate with her, with her saying, you know, that there's a lot of people there [at the house where she shot the victim]; there's

-6-

a gun there; it's on the bed or the dresser, I think; but I sure got it and I shot it. As so, the [c]ourt gives weight, great weight to that enhancement factor.

Regarding youth as a mitigating factor, the trial court did not "find any weight to give that factor" and explained that the Defendant "agreed with [the trial court] that guns and intoxication, drinking, do[] not mix." Upon weighing these factors, the trial court determined that probation was not appropriate for the Defendant. We conclude there was a sufficient basis for the trial court's judgment. The Defendant has failed to establish an abuse of discretion or otherwise overcome the presumption or reasonableness afforded to the trial court's denial of alternative sentencing, including probation. Accordingly, the Defendant is not entitled to relief regarding this issue.

## II. Good Behavior Credits

The Defendant also argues that she is entitled to good time credits under Tennessee Code Annotated section 41-2-111(b). The State agrees that the trial court improperly restricted the Defendant's ability to accumulate good behavior credits by ordering the Defendant to serve four months of her sentence before being eligible to accumulate good behavior credits. We agree.

Tennessee Code Annotated section 41-2-111(b) states,

Each such prisoner who has been sentenced to the county jail or workhouse for any period of time less than one (1) year on either a misdemeanor or a felony, and who behaves uprightly, shall have deducted from the sentence imposed by the court time equal to one quarter ( ¼ ) of the sentence. In calculating the amount of good time credit earned, the one-quarter reduction shall apply to the entire sentence, including pre-trial and post-trial confinement. Fractions of a day's credit for good time of one half ( ½ ) or more shall be considered a full day's credit. If any prisoner violates the rules and regulations of the jail or workhouse, or otherwise behaves improperly, the sheriff or superintendent of the institution may revoke all or any portion of the prisoner's good time credit; provided, that the prisoner is given a hearing in accordance with due process before a disciplinary review board and is found to have violated the rules and regulations of the institution.

At sentencing, the trial court relied on Ray v. Madison City., Tennessee, 536 S.W.3d 824 (Tenn. 2017) in limiting the Defendant's ability to accumulate good behavior credits. In Ray, our supreme court held that "trial courts are authorized to establish the percentage of a felony split confinement sentence that a defendant must serve in actual confinement before the defendant may participate in work programs and earn work credits." Id. The court further explained that a court may "fix the actual confinement

percentage at 100%, if doing so is consistent with the principles of the Sentencing Act" and that "even if a trial court orders 100% service of a split confinement sentence – which would effectively preclude a defendant from earning work credits – the 100% requirement does not preclude inmates from earning good time credits under Tennessee Code Annotated section 41-1-111(b)." Id. at 838-39; see also State v. Jeannie Hudson, No. E2001-00377-CCA-R3-CD, 2002 WL 264625, at *4 (Tenn. Crim. App. Feb. 19, 2002) (explaining that Tennessee Code Annotated section 41-2-111(b) entitles defendants sentenced to county jails for less than one year to good conduct credits and citing earlier cases applying this same proposition).

Thus, a trial court may fix a percentage of a felony split confinement that a defendant must serve prior to being eligible to earn work credits; however, it may not prevent a defendant from earning good behavior credits under Tennessee Code Annotated section 41-2-111(b). Accordingly, the Defendant's case is remanded for entry of a corrected judgment form reflecting no limitations on the Defendant's ability to earn good behavior credits.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed in part, reversed in part, and the case is remanded for entry of a corrected judgment form.

_____
D. KELLY THOMAS, JR., JUDGE